RECEIVED
APR - 6 2021
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

**UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF OHIO**

**UNITED STATES OF AMERICA**
*ex rel.* **SHELLEY PATRICIA STEVENS,**

       **and**

**SHELLEY PATRICIA STEVENS,**

       **Plaintiffs,**

**v.**

**LINDA HILLER,**

       **Defendant**

**FILED UNDER SEAL**
**PURSUANT TO**
**31 U.S.C. § 3730(b)(2)**

**CASE NO.** 2 2 1 C V 1 5 7 7

**Judge** Judge Sargus

MAGISTRATE JUDGE JOLSON

**COMPLAINT**

**Plaintiff Shelley Stevens states her Complaint:**

**INTRODUCTION**

This action is brought under the False Claims Act, 31 U.S.C. § 3729 *et seq*. *Qui tam*

Plaintiff Shelley Stevens (herein "Plaintiff") rented an apartment and garage space from Linda

Hiller (herein "Defendant") pursuant to a federally-regulated rent subsidy program known as the

Section 8 Tenant Based Housing Choice Voucher Program ("Section 8 Program"), administered

locally by Athens Metropolitan Housing Authority (AMHA). Landlords that rent under the

Section 8 program are required to submit the proposed lease with rent amount and designate

utilities for which the tenant will be responsible. Based upon the lease, the landlord and AMHA

enter into a Housing Assistance Payment Contract ("HAP"), which states that tenants are not to

be charged for anything in connection with rental of the unit not disclosed in the lease.

1

Defendant violated the law by stating under the HAP contract that electrical service would be provided by the landlord, but holding Plaintiff responsible for the electric bill.

The United States seeks all remedies available under the False Claims Act. Plaintiff seeks a statutory share of any awarded damages paid to the United States under the False Claims Act, in addition to costs and reasonable attorney fees, as well as damages for the unconscionable contract.

## PARTIES

1. Plaintiff, Shelley Stevens, was a tenant of the Defendant at premises located at 5270 Lower Allison Rd, Athens, OH 45701. ("the premises"), from October 2018 through November 2020.

2. Plaintiff United States of America is *ex rel*. Shelley Stevens.

3. Defendant Linda Hiller is a private citizen who owns the rental unit at issue in this matter, and managed and acted as the landlord at the property where Plaintiff rented.

## JURISDICTION

4. This court has jurisdiction over the federal claim pursuant to 28 U.S.C. §§ 1331 and 1345, 1367, and 31 U.S.C. § 3732.

## VENUE

5. Defendant committed the unlawful acts in Athens County in the State of Ohio. Venue is proper under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

6. The federal government instituted the Section 8 Program to assist low income families with obtaining decent, safe, sanitary, and affordable rental housing; it is authorized by Section 8 of

the U.S. Housing Act of 1937, 42 U.S.C. §1437f, and governed by regulations contained in 24 C.F.R. Part 982.

7. Under the Section 8 Program, the United States Department of Housing and Urban Development (HUD) enters into annual contribution contracts with public housing agencies (PHA), including AMHA.

8. Pursuant to the annual contribution contract, AMHA enters into a contract with the landlord of an existing dwelling to make monthly housing assistance payments on behalf of eligible tenants, subject to HUD approval; this contract is known as a Housing Assistance Payments Contract (HAP).

9. The HAP establishes the monthly rental amount. AMHA pays any subsidy to which the landlord is entitled directly to the landlord.

10. The HAP may also provide that, based on the tenant's ability to pay, the tenant pay a portion of the rent in addition to the payments made by AMHA.

11. Generally, Section 8 participants pay 30% to 40% of their adjusted monthly income for rent and utilities, while AMHA pays the remaining balance.

12. Each Section 8 participant that has tenant paid utilities in the lease may be given a utility allowance calculated on unit size and type.

13. The Section 8 tenant's utility allowance is determined based upon the utilities specified in the lease that the tenant is responsible for paying. If the tenant has no income, AMHA will pay the entire contract rent to the landlord and send a utility allowance check to the tenant.

14. In addition to the HAP, the landlord simultaneously enters into a lease agreement with the eligible family that must comply with federal regulations. The HAP establishes the initial

lease term and initial monthly rent to the landlord which cannot be increased without a redetermination by AMHA.

15. Every year, participants in the Section 8 Program must undergo recertification by AMHA.

16. At all times hereafter mentioned, Plaintiff was a recipient of housing assistance from AMHA under the Section 8 Program. Plaintiff occupied the premises continuously from October 2018 through November 2020.

17. Plaintiff and Defendant entered into a lease agreement, where Plaintiff would rent the premises from Defendant in the amount of $585 per month.

18. Defendant entered into a HAP Contract with AMHA on November 30, 2018. The HAP with Defendant was renewed in December 2019.

19. Throughout Plaintiff's participation in the Section 8 Program, AMHA had an annual contribution contract with HUD; pursuant to this contract, HUD provided money to AMHA to pay for housing assistance to Defendant on Plaintiff's behalf.

20. For the initial HAP contract, AMHA was to pay Defendant a housing assistance payment of $285 per month.

21. The HAP contract stated that Defendant would be responsible for all utilities.

22. Consequently, all monies paid to the Defendant landlord were related to rent, and utilities.

23. However, for the duration of the tenancy, Defendant held Plaintiff solely responsible for the electric bill.

24. For the duration of the tenancy, electricity was supplied by American Electric Power (AEP).

25. For the duration of Plaintiffs tenancy, the AEP account covering the premises was in Defendants name.

26. For the duration of Plaintiff's tenancy, the AEP bill in Defendants name would be mailed to Plaintiffs mailbox. At the direction of Defendant, Plaintiff paid the bill.

27. Plaintiff attempted several times to talk to Defendant, and secure her compliance with the HAP contract. However, at each attempt, Plaintiff was told by Defendant that Plaintiff could either continue paying the electric bill, or leave.

28. During the course of Plaintiffs tenancy, Defendant began building new structures on the premises, but only used one electrical box. As a result, Plaintiff was forced to pay more each month to keep electrical service to the premises.

29. On or about November 2, 2020, Defendant threatened to disconnect electrical service to the premises if Plaintiff did not either pay the electric bill, or vacate the premises.

30. Plaintiff vacated the premises on or about November 30, 2020.

**FIRST CAUSE OF ACTION:**

**VIOLATION OF FALSE CLAIMS ACT**

31. Plaintiff incorporates the allegations set forth in paragraphs one (1) through thirty (30) as though pleaded herein in full.

32. The False Claims Act, 31 U.S.C. § 3729 *et seq.*, imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Such person could be liable to the United States for not less than $5,000 and not more than $10,000, plus three times the damages suffered by the United States as a result of such person's actions. *See* 31 U.S.C. §3729(a)(1)(G).

33. The FCA defines "knowingly" to include, with respect to information, the actions of a person who acts in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the

5

information, or has actual knowledge of the information; no proof of specific intent to defraud is necessary. 31 U.S.C. § 3729(b)(1). "Claim" is defined to include "any request or demand" for money made to a recipient if the United States, "provides or has provided any portion of the money or property requested or demanded", to advance a Government program or interest. 31 U.S.C. § 3729(b)(2)(A)(ii)(I).

34. Defendant agreed in Part B of the HAP, paragraph 7(b), that "[u]nless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

35. Defendant further agreed in Part C of the HAP, paragraph 5(e), that "[t]he owner may not charge or accept, from the family... any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities, and appliances to be provided and paid by the owner in accordance with the lease." Furthermore, "[t]he owner must immediately return any excess rent payment to the tenant."

36. Defendant knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(B).

37. Defendant's endorsement and presentation for payment of each monthly housing assistance payment check, while knowingly not paying for electrical utilities, constitutes a separate false claim or representation against the United States.

38. Defendant's endorsement and presentation for payment of each monthly housing assistance payment check, while knowingly imposing payment of electricity utility bills on the tenant, constitutes a separate false claim or representation against the United States.

39. On information and belief, Defendant endorsed and presented for payment twenty-four housing assistance payment checks, while knowingly imposing additional costs on Plaintiff.

40. The United States of America suffered damages as a result of violations of the False Claims Act because the housing assistance payment money which HUD disbursed to AMHA for payment to Defendant under the Section 8 Program on behalf of Plaintiff would not have been paid to the Defendant absent Defendant's false claims and misrepresentations.

41. The United States sustained damages equal to all payments made to Defendant pursuant to Plaintiff's Section 8 assistance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the United States of America respectfully request the following relief:

A. Find that Defendant violated the False Claims Act and is liable to the United States.

B. Assess a civil penalty against Defendant for each separate violation of the False Claims Act in the amount of not less than $5,000 and not more than $10,000, for a total of not less than $132,000 and not more than $264,000.00.

C. Award the United States three times the amount of damages that it sustained as a result of Defendant's acts.

D. Award the Plaintiff the *qui tam* plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

E. Award Plaintiff costs and reasonable attorney's fees under applicable Federal and State Law.

F.    Grant whatever other relief is just and proper.

Respectfully Submitted,

Peggy P. Lee SCN 0067912
Luke S. Condon SCN 0098832
Trial Attorneys
**Southeastern Ohio Legal Services**
964 E. State St.
Athens, OH 45701
Phone (740) 594-3558
Fax (740) 594-3791
Email plee@seols.org

8